Good morning. May it please the Court, David Firmino, Assistant Federal Public Defender, on behalf of Juan Castillo-Castellano. Mr. Castellano's case was not atypical. It was a prosecution for illegal reentry. What was atypical about the case was the way in which the district judge calculated the sentence and imposed a mid-range sentence and not adhering to the factors set forth in Section 3553. I want to address a couple of points that I think are key to the analysis here, and that is the first is lurking behind, I think, the government's view in this case is that there is a presumption that a within-guidelines sentence is reasonable. There is no such presumption. I think that the court can look at and review the district court's imposition of a mid-range sentence, notwithstanding the fact that the court has said that it – excuse me – notwithstanding the fact that that sentence fell squirrelly within the guidelines. Kennedy. Let's assume you're right, there's no presumption. You would agree that you start out by calculating what the guideline range is, and you look at that as a first step in the process, wouldn't you? Absolutely. I would agree with that. And there's no doubt that that's what Judge Ilston did in this case. And, in fact, that is the correct – that is the correct step. However, what was done after that is what is incorrect. And – What convictions did your client have at the time he was sentenced? How many priors? Your Honor, I think the government states that exactly in their brief. And I'm not sure of the exact number, but there were numerous felonies and misdemeanor convictions, including a prior conviction or two, at least, for illegal re-entry. And convictions other than border crossing. That's correct. Right? That's correct. Drugs? Correct. There's no doubt, Your Honor, that Mr. Castillo-Castellano was not a model citizen when he was here, but I think the sentence that was imposed by Judge Ilston exceeded that which was necessary in this case. His – the only other – the closest other sentence he had to the sentence imposed by the district court was on the order of 30 months. It was not even close. And so I think if you look at it in that context, the – the – Thirty months for a prior illegal re-entry following deportation? That's correct. Pursuant to this district's fast-track policy. Okay. And wasn't this 86 sort of in the mid-range of the calculation? It was. The guideline range was 77 to 96 months, and the judge imposed exactly the – the middle range of that guideline range. Didn't go to the top, didn't go to the bottom. That's correct. And it is in – in that analysis that the – that the court's reasoning is flawed. It is that the court did not address the factors in – in 3553. What the court did was focus, as the government points out, on a couple of the prior convictions of the – of Mr. Castillo-Castellano, specifically conviction for spousal battery and the prior convictions for illegal re-entry, and used that as a basis for suggesting that a middle-range sentence was appropriate. I don't believe that Judge Ilston addressed specifically the arguments raised by counsel below. I think the judge noted the arguments, but there was no real discussion, no colloquy between the Court and counsel about what the basis for the departures were, simply a recitation of the departures and a rejection of them. I don't believe that that's the kind of consideration that Booker requires. And I think the court did not engage in the required analysis. Would you like us to remand the MRI and remand so that you can look at it, the – look at the guidelines as advisory? Your Honor, I think that that would be the – the correct step. I think that the – the court should remand this to Judge Ilston for reconsideration and to address the appropriate factors raised by counsel and the factors that must be considered after Booker. Judge Noonan's question is about an amyline remand. Yes. This case was sentenced immediately prior to Booker, am I correct? That's correct. And so his question is an amyline remand. That is where the judge can say yes or no. If I knew the guidelines were advisory when I sentenced, I would have – would not have sentenced the same. I'm sorry. I didn't – thank you for that clarification. Yes. I would request an amyline remand. Yes. Do you and your client understand that if we were to do that, she were to say yes, she could hold a re-sentencing and increase the sentence? Yes, Your Honor. I'm aware of that. I think getting back to the – Judge Reinhart's question about whether I would agree that the first step in the analysis is the calculation of the guideline range, that is correct. But I think an additional area where the Court erred was in giving overriding consideration to the guideline calculation. It seemed to be before Booker. That's correct. So at that point, the guidelines were mandatory. There's no question that they were mandatory, but – That's why she gave overriding consideration to them. That's correct. But Booker – but Booker – Now they're not. That's correct. So as Judge Newman suggested and Judge Hawkins claimed, we would remand and ask her, if you had known that they were discretionary and not – or they were guidance and not mandatory, would you have imposed the same sentence? And she may well say, no, if I had had the freedom to just look at them as advice, I might have given a higher or a lower sentence. That's correct. And, indeed, the statutory maximum is the available sentence on remand. And I think Mr. Castellano is aware of that possibility. And I think that the Court certainly is aware of their duty on an ammaline remand to look at the record fairly. And I don't believe that that's a risk that – I don't believe that that is a risk that should not be undertaken here. I think that Mr. Castellano deserves a hearing where the 3553 factors are considered. All right. Thank you. I'd like to reserve the remaining three minutes for rebuttal unless there are any other questions. Thank you, counsel. Good morning. May it please the Court. My name is Jeff Finnegan. I'm with the United States Attorney's Office on behalf of the United States in this appeal. And, Your Honors, the United States' position, obviously, as you know from our brief, is, first of all, that the Court lacks jurisdiction here because the defendant failed to file a notice of appeal in the particular case where he is seeking appeal from his 86-month sentence. The failure to file the notice of appeal is a complete failure. It is not as if a defective notice of appeal was filed, which could be remedied. This is a case where no notice of appeal was filed. So — Well, a notice of appeal was filed with a different number, appeal number? That's correct, Your Honor. With the case number — It's not exactly as if nothing was filed. As to the case where 86 months was imposed, nothing was filed, Your Honor. The notice — There was nothing filed under that number. There was an appeal filed with a different number, but the brief related to the 86 months. That is true, Your Honor. How was the government prejudiced? Well, Your Honor, I respectfully — Surprised by anything that went on in this appeal? I was not surprised by the brief, Your Honor, but I respectfully — Yes, it did. So you knew that's what they were attacking, and you were able to respond to it? Yes, Your Honor. Where's the prejudice? Well, Your Honor, I respectfully don't think that that is the issue. There's a statute that requires a notice of appeal to be filed, and that statute was not complied with. So I don't think that the issue is whether or not the government was prejudiced here, but that the statute was not complied with. You know, Mr. Finnegan, earlier this week, we had a case where the U.S. attorney got mixed up in filing a request for a wiretap and attached a request for Pittsburgh to an Arizona wiretap, and the government came in here and said, well, that was just a technical mistake. It surely didn't comply with the statute, but you ought to overlook it. It was just a technical mistake. I know you were not involved in that case, but be aware the government sometimes is asking for a little equity as well, and a hard line on technicality just doesn't play very well. I understand. I know it may in that case. Your Honor, the government's next argument is that the Court doesn't have jurisdiction assuming the Court is going to evaluate the sentence and not remand it pursuant to Ammaline, would not have jurisdiction pursuant to Ammaline. So should we reach any of those issues if the case is appropriate for remand under Ammaline? If that is the Court's intention, I don't believe the Court has to address that issue. That's correct. If the Court is undecided on that, then I will address it for Your Honor. But why wouldn't it be – why wouldn't we be required to remand under Ammaline? I would submit that if the defense is asking for that and if Your Honors are inclined to do so, that I don't have an argument. But the law of the circuit is that in cases like this where the sentence was imposed under a mandatory scheme, we ask the district court if there would be any difference in sentencing. It leaves it to the district court to say yes or no. If they say no, the case is over with. If they say yes, the district court can re-sentence. That's true, Your Honor. The argument was just –  In this case, Judge Yeltsin could go down. She could also go up. That's correct. And that argument or that idea was presented for the first time this morning. That's why I'm prepared to address the other issues. It's the law. It's not – it doesn't matter what he wants or what you want. It's the law, isn't it? Well, if the defendant, for example, had asked that it not be remanded pursuant to Ammaline, Your Honors may have been – Fair point. Fair point. Okay. All right. I think probably the result's fairly clear. A defendant has asked for Ammaline remand, and he's entitled to it. Very well. That's what the Court intends. I won't address the further arguments. Thank you, counsel. Thank you. Okay. Thank you very much. It's a yes. Next case for argument is United States v. Rodriguez-Gomez.
judges: Reinhardt, Noonan, Hawkins